UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

KRISTIN DAVIS,

                    Plaintiff,

          -v-

STATE OF NEW YORK, OFFICE OF MENTAL
HEALTH (BUFFALO PSYCHIATRIC CENTER
and ANN MARIE T. SULLIVAN, M.D.
COMMISSIONER OF THE STATE OF NEW
YORK OFFICE OF MENTAL HEALTH, in her
official capacity,

                    Defendants.

Index No.:

**COMPLAINT**     23 CV 116-JLS

**JURY TRIAL DEMANDED**

          Plaintiff Kristin Davis ("Plaintiff"), complains as follows against Defendants State of New

York, Office of Mental Health (Buffalo Psychiatric Center) ("Defendant OMH") and Ann Marie T.

Sullivan, M.D. Commissioner of the Office of Mental Health, in her official capacity ("Defendant

Commissioner"):

## NATURE OF COMPLAINT

1.  This is a proceeding for declaratory relief and damages for violations of Plaintiff's rights under the

    Rehabilitation Act of 1973, 29 U.S.C. § 794 et seq. ("Rehab Act") and the Americans with

    Disabilities Act of 1990, as amended ("ADA"), 42 U.S.C. § 12101 et seq.  Plaintiff contends

    Defendants have intentionally discriminated against her because of her disability by subjecting her

    to discriminatory terms and conditions of employment, including a failure to accommodate her

    disability and differential treatment based on her disability, culminating in her indefinite

    suspension from duty without pay.

## JURISDICTION AND VENUE

2.  This court has original jurisdiction pursuant to 28 U.S.C. § 1331 and § 1343 (4), as this case asserts

    rights under the Rehab Act and ADA.

3.  Venue is proper under 28 U.S.C. §1391(b).

4.  Plaintiff has exhausted all administrative remedies, by filing a complaint with the New York State Division of Human Rights on or about January 4, 2022 (**Exhibit 1** hereto), which was concurrently cross-filed with the United States Equal Employment Opportunity Commission ("EEOC"), and being notified of her right to sue by notice dated November 8, 2022 (**Exhibit 2** hereto), which Plaintiff received via U.S. mail on November 12, 2022.

## PARTIES

5.  Plaintiff has been a resident of the County of Erie in the State of New York at all relevant times hereto.  She is a member of the classes of persons protected by the Rehab Act and ADA.

6.  Upon information and belief, Defendant State of New York, Office of Mental Health, has a location of 400 Forest Avenue, Buffalo, NY 14213 and at all relevant times was an employer engaged in promoting recovery for adults with serious mental illnesses.

7.  Defendant Dr. Ann Marie T. Sullivan, as the Commissioner of the Office of Mental Health, has the authority and power to suspend, discipline, terminate and reinstate all employees, including Plaintiff.

## BACKGROUND

8.  Plaintiff first worked for Defendant beginning on or about November 5, 2005 and at all times held the position of Dental Hygienist.

9.  As a Dental Hygienist, Plaintiff's primary job functions included performing oral examinations, oral prophylactic care, and providing assistance to the dentist in virtually all facets of patient care at the OMH's dental clinic in Buffalo, New York.

10. Plaintiff suffers from a congenital cardiac condition known as patient foramen ovale ("PFO"). This condition presents an increased risk of stroke, particularly for Plaintiff's age (43 years as of the time of this Complaint). She was originally diagnosed with PFO in 2016.

### DISABILITY DISCRIMINATION

11. Plaintiff was subjected to disability discrimination in connection with her employment as a Dental Hygienist, including as set forth herein.

12. Defendants were aware of Plaintiff's disabilities at least as early as November 1, 2021, when she requested from Defendants a reasonable accommodation, indicating on her written accommodation request that she suffered from PFO.

13. On October 6, 2021, Defendants published to all of their employees an Emergency Regulation implementing a mandatory COVID-19 vaccination program (**Exhibit 3** hereto).

14. Part 557.5 of the Emergency Regulation provided, in relevant part:

(a) All Staff who work in Hospitals will be required to be vaccinated with at least one vaccine dose against COVID-19 by November 1, 2021 and shall be Fully Vaccinated by December 10, 2021.

(b) Commencing on October 12, 2021, all Staff who work in Hospitals who are not Fully Vaccinated shall be tested for COVID-19 pursuant to the provisions herein for those who are granted a reasonable accommodation.

(c) A reasonable accommodation may be made for Staff who have a documented pre-existing health condition that prevents them from complying with the vaccine requirements herein. When a reasonable accommodation is approved for a Staff member, they must comply with the following testing provisions.

(d) Staff who have been granted such a reasonable accommodation are required to undergo diagnostic screening testing.  Staff may choose either antigen or molecular tests to satisfy this requirement but must be tested at least once weekly.  Any test used must either have Emergency Use Authorization by the U.S. Food and Drug Administration or be operating per the Laboratory Developed Test requirements of the U.S. Centers for Medicare and Medicaid Services.

Exh. 3.

15. On or around October 12, 2021, Plaintiff contacted Defendants' Human Resources department ("HR") to inquire about requesting a reasonable accommodation for her PFO disability.  In reply, HR advised her to submit a written Application to Request Reasonable Accommodation of a Disability ("RA Application"), which Plaintiff subsequently completed.

16. Immediately following the issuance of the Emergency Regulation, Plaintiff began receiving weekly diagnostic screening for COVID-19.

17. Plaintiff submitted her completed RA Application to HR on November 1, 2021. With her RA Application, Plaintiff included a letter from her primary care physician (together with the RA Application attached as **Exhibit 4** hereto) indicating that as a result of Plaintiff's PFO disability, he supported her decision to abstain from obtaining a COVID-19 vaccination, and that reasonable safety measures in lieu of her receiving this vaccine could include her undergoing frequent COVID screening while at work, maintaining distance from others, wearing full personal protective equipment ("PPE") when performing patient care, and isolating if necessary in the event of potential exposure to COVID-19.

18. Under normal circumstances, requests for reasonable accommodations are processed by HR, but around the time the Emergency Regulation was published in October 2021, Defendants enlisted

and trained dozens of new staff members as temporary Designees for Reasonable Accommodations

("DRAs") to process reasonable accommodation requests.

19. Defendants' recruiting and training of so many new temporary DRAs was carried out in

anticipation that many of Defendants' employees would require reasonable accommodations from

the mandatory COVID-19 vaccination program.

20. On December 30, 2021, Defendants sent a written notice (**Exhibit 5** hereto) to Plaintiff indicating

Defendants were "unable to accommodate your request to be exempt from the COVID-19

Vaccination mandate effective November 1, 2021." Defendants further wrote in the notice,

> As a Dental Hygienist assigned to Buffalo Psychiatric Center, an essential function of
> your position can put you in routine contact with hospital patients and patient care staff.
> Individuals who are in such positions and are unvaccinated pose a significant risk of
> substantial harm to themselves and others. Thus, our inability to perform an essential
> function of your job safely would result in an undue hardship by impacting the safe and
> efficient operation of the facility.

> There is no alternate accommodation identified that would ensure the health and safety
> of the patients and staff and reduce the level of a direct health and safety threat to our
> patients and other staff at the facility.

Exh. 5.

21. In addition to the notice of denial of Plaintiff's reasonable accommodation request,

Defendants sent Plaintiff a written notice (**Exhibit 6** hereto) on that same date, December

30, 2021, stating that her failure to receive at least one dose of the COVID-19 vaccine by

January 5, 2022, and to be fully vaccinated by February 4, 2022 would result in immediate

suspension without pay pending termination from State service.

22. Following Defendants' notice of denial of Plaintiff's reasonable accommodation request and order

to vaccinate, the Director of Dental Services at Defendant OMH personally emailed Defendants

and asked Defendants to reconsider the denial of Plaintiff's request. The Director of Dental

Services specifically noted to Defendants that dental patients at the clinic would suffer if Plaintiff

were to be terminated from employment, as the Director of Dental Services would be unable to perform anything beyond radiographs and exams, and all dental treatment such as restorations, root canal therapy, and oral surgery would need to be referred to Erie County Medical Center ("ECMC"), which would increase the risks to those patients as COVID-19 infection rates were high at ECMC, and would further delay treatment for those patients as they would then have to be added to the ECMC dental clinic waiting list, which was already long at approximately four (4) to six (6) weeks in duration.  The Director of Dental Services further noted to Defendants that the clinic would likely be unable to quickly hire a replacement Dental Hygienist in the event Plaintiff were terminated, and that even if a replacement were to be quickly hired, there would be a lengthy training process which would add to delays in patient care.

23. Following Defendants' December 30, 2021 notice denying Plaintiff's request for a reasonable accommodation for her PFO disability, Plaintiff submitted an alternative proposal for accommodating her disability (**Exhibit 7** hereto), which proposal closely followed the provision in Defendants' Emergency Regulation requiring diagnostic screening testing for any employee who was unable to comply with the vaccine requirement due to an underlying medical condition. Specifically, Plaintiff proposed:

   1. Check in upon entrance of building including temperature checks, and online screening process before shift, monitoring my own symptoms

   2. Weekly covid testing on site before shift starts

   3. FULL PPE masking, gloves, gowns, N95, HALO mask during appropriate procedures, disposable scrubs, shoe covers and head covers.

   4. Proper room ventilation including negative pressure, operation of HEPA filtration system, fogging of the operatory to remove aerosols

5.  All patients go through screening prior to appt including temperature and testing depending [on] their procedures.

6.  Reduced patient traffic.

7.  Patient interaction is reduced to only the necessary contact while providing care.  All other time I remain isolated in my office to prevent unnecessary contact with patients and staff.

Exh. 7.  The HALO mask is a lightweight, portable, battery-powered air purifying respirator mask that can be worn by medical staff throughout all hours of their workday and which provides substantially increased protection against exposure to COVID-19 compared to traditional face masks.  In testing, HALO masks proved effective at capturing over 99% of airborne particulates and pathogens down to 0.1 microns.  By comparison, the COVID-19 virus measures approximately 0.125 microns in diameter, meaning the HALO mask theoretically should, if used properly, eliminate the risk of exposure or spread of the virus.[1]

24. Plaintiff further wrote to Defendants on January 3, 2022 requesting reconsideration of the denial of her accommodation request.

25. On that same date, January 3, 2022, Plaintiff also submitted to Defendants a written Request to Appeal a Reasonable Accommodation Determination.  In her written appeal, Plaintiff specifically noted that her accommodation requested was to test weekly, wear full PPE, and wear a facemask in Defendants' facilities.

26. A few hours later on that same date, January 3, 2022, Defendants emailed Plaintiff that they had reviewed her appeal request and simply stated, without further explanation, that "the determination stands."

---

[1] *See* CLEAN SPACE RESPIRATORS, "FAQs," https://halolife.io/pages/faq (visited January 31, 2023).

27. On January 6, 2022, Defendants notified Plaintiff that she was suspended Plaintiff from duty, without pay, indefinitely, and effective immediately, due to her failure to receive a dose of the COVID-19 vaccine prior to that date.

28. Plaintiff used her accrued paid leave from January 6, 2022 until February 16, 2022, when her leave accruals were exhausted.

29. Plaintiff has remained suspended without pay, and without the use of accrued leave, since February 16, 2022, and Defendants' decision to terminate her employment remains pending as of the date of this Complaint.

30. Upon information and belief, several other employees of Defendants have been granted exemptions from the COVID-19 vaccine requirement.

**FIRST CAUSE OF ACTION –**
**DISABILITY DISCRIMINATION IN VIOLATION OF THE REHAB ACT, 29 U.S.C. § 794**
**AGAINST DEFENDANT OMH**

31. Plaintiff repeats and realleges every allegation in paragraphs 1 through 30 of this Complaint with the same force and effect as though fully set forth herein.

32. At all relevant times herein, Plaintiff was a disabled employee within the meaning of the Rehab Act.

33. Defendant OMH engaged in discrimination against Plaintiff on the basis of her PFO disability in violation of the Rehab Act by subjecting Plaintiff to disparate treatment as set forth above, which included discriminatory terms and conditions of employment, failure to reasonably accommodate her disability, and the decision to suspend her from duty without pay indefinitely pending a decision to terminate her employment.

34. As a direct result of Defendant OMH's acts set forth herein against Plaintiff, Plaintiff has lost past and future wages and other employment benefits, including accrued paid leave, and has suffered

damage to her reputation and severe and lasting embarrassment, humiliation, and mental and emotional anguish, and other incidental and consequential damages and expenses.

35. Defendant OMH is continuing this ongoing act of discrimination by failing to reinstate Plaintiff to duty, failing accommodate her disability, and keeping her on unpaid suspension as of the date of this Complaint.

**SECOND CAUSE OF ACTION –
DISABILITY DISCRIMINATION IN VIOLATION OF THE REHAB ACT, 29 U.S.C. § 794
AGAINST DEFENDANT COMMISSIONER**

36. Plaintiff repeats and realleges every allegation in paragraphs 1 through 35 of this Complaint with the same force and effect as though fully set forth herein.

37. At all relevant times herein, Plaintiff was a disabled employee within the meaning of the Rehab Act.

38. Defendant Commissioner engaged in discrimination against Plaintiff on the basis of her PFO disability in violation of the Rehab Act by subjecting Plaintiff to disparate treatment as set forth above, which included discriminatory terms and conditions of employment, failure to reasonably accommodate her disability, and the decision to suspend her from duty without pay indefinitely pending a decision to terminate her employment.

39. As a direct result of Defendant Commissioner's acts set forth herein against Plaintiff, Plaintiff has lost past and future wages and other employment benefits, including accrued paid leave, and has suffered damage to her reputation and severe and lasting embarrassment, humiliation, and mental and emotional anguish, and other incidental and consequential damages and expenses.

40. Defendant Commissioner is continuing this ongoing act of discrimination by failing to reinstate Plaintiff to duty, failing accommodate her disability, and keeping her on unpaid suspension as of the date of this Complaint.

### THIRD CAUSE OF ACTION –
### DISABILITY DISCRIMINATION IN VIOLATION OF THE ADA, 42 U.S.C. § 12101
### AGAINST DEFENDANT COMMISSIONER

41. Plaintiff repeats and realleges every allegation in paragraphs 1 through 40 of this Complaint with the same force and effect as though fully set forth herein.

42. At all relevant times herein, Plaintiff was a disabled employee within the meaning of the ADA.

43. Defendant Commissioner engaged in discrimination against Plaintiff on the basis of her PFO disability in violation of the ADA by subjecting Plaintiff to disparate treatment as set forth above, which included discriminatory terms and conditions of employment, failure to reasonably accommodate her disability, and the decision to suspend her from duty without pay indefinitely pending a decision to terminate her employment.

44. As a direct result of Defendant Commissioner's acts set forth herein against Plaintiff, Plaintiff has lost past and future wages and other employment benefits, including accrued paid leave, and has suffered damage to her reputation and severe and lasting embarrassment, humiliation, and mental and emotional anguish, and other incidental and consequential damages and expenses.

45. Defendant Commissioner is continuing this ongoing act of discrimination by failing to reinstate Plaintiff to duty, failing accommodate her disability, and keeping her on unpaid suspension as of the date of this Complaint.

WHEREFORE, Plaintiff requests relief as hereinafter provided:

a) Empanel a jury to hear Plaintiff's complaint;

b) Enter judgement declaring the acts and practices of Defendants to be in violation of the laws of the United States;

c) Issue a permanent injunction ordering Defendants to cease and desist from engaging in the illegal and unlawful acts and practices described herein;

d) Reinstate Plaintiff to her former position as a Dental Hygienist at Defendant OMH, or one reasonably similar in its duties, compensation, and benefits;

e) Award Plaintiff the amount of wages and benefits lost as a result of Defendants' discrimination;

f) Award plaintiff compensatory damages for losses resulting from Defendants' discrimination;

g) Award Plaintiff punitive damages;

h) Award Plaintiff the cost of this action, together with interest and reasonable attorney's fees.

Dated:   February 1, 2023

Kristin Davis
69 Irving Terrace
Buffalo, NY 14223
(prepared with the assistance of an attorney)

# EXHIBIT 1

NEW YORK STATE
DIVISION OF HUMAN RIGHTS

| | |
|---|---|
| NEW YORK STATE DIVISION OF HUMAN RIGHTS on the Complaint of<br><br>KRISTIN DAVIS,<br><br>                                         Complainant,<br><br>                         v.<br><br>BUFFALO PSYCHIATRIC CENTER,<br><br>                                         Respondent. | VERIFIED COMPLAINT<br>Pursuant to Executive Law,<br>Article 15<br><br>Case No.<br>**10215704** |

I, Kristin Davis, residing at 69 Irving Terrace, Buffalo, NY, 14223, charge the above named respondent, whose address is 400 Forest Ave., Buffalo, NY, 14213 with an unlawful discriminatory practice relating to employment in violation of Article 15 of the Executive Law of the State of New York (Human Rights Law) because of disability.

Date most recent or continuing discrimination took place is 12/30/2021.

The allegations are:

Please See Attached

RECEIVED

JAN 0 4 2022

Buffalo

## New York State Division of Human Rights
## Employment Complaint Form

Although workers, interns and volunteers of all ages are protected, you must be 18 years or older to file a complaint. A parent, guardian or other person having legal authority to act in the minor's interests must file on behalf of a person under the age of 18.

### 1. Your contact information:

| | |
|---|---|
| First Name kristin | Middle Initial/Name |
| Last Name davis | |
| Street Address/ PO Box 69 irving terrace | Apt or Floor #: |
| City buffalo | State ny | Zip Code 14223 |

| If you are filing on behalf of another, provide the name of that person: | Date of birth: | Relationship: |
|---|---|---|

### 2. Regulated Areas: Check the area where the discrimination occurred:
(If you wish to file against multiple entities, for example employer and temp agency, please file a separate complaint against each.)

- ☑ Employment *(including paid internship)*
- ☐ Internship *(unpaid)*
- ☐ Contract Work *(independent contractor, or work for a contractor)*
- ☐ Volunteer Position
- ☐ by a Labor Organization
- ☐ Apprentice Training
- ☐ by a Temp or Employment Agency
- ☐ Licensing

### 3. You are filing a complaint against:

Employer, Worksite, Agency or Union Name

Buffalo Psychiatric Hospital / Office of Metal Health

Street Address/ PO Box

400 Forest Ave

| City buffalo | State ny | Zip Code 14213 |
|---|---|---|

Telephone Number:
7168852261

In what *county or borough* did the violation take place?

erie

Individual people who discriminated against you:

| Name: _____ | Title: _____ |
|---|---|
| Name: _____ | Title: _____ |

If you need more space, please list them on a separate piece of paper.

### 4. Date of alleged discrimination *(must be within one year of filing)*:
The most recent act of discrimination happened on:   dec 30 2021 ____ ____
                                                       month   day   year

### 5. For employment and internships, how many employees does this company have?
☐ 1-14   ☐ 15-19   ☑ 20 or more   ☐ Don't know

1
Complaint

| **6. Are you currently working for this company?** | | | | | |
|---|---|---|---|---|---|
| ☑ Yes. Date of hire: | 11 | 05 | 2005 | What is your position? | |
| | month | day | year | dental hygienist | |
| ☐ No. Last day of work: | | | | What was your position? | |
| | month | day | year | | |
| ☐ I was never hired. Date of application: | | | | What position did you apply for? | |
| | month | day | year | | |

**7. Basis of alleged discrimination:**
Check **ONLY** the boxes that you believe were the reasons for discrimination, and fill in specifics only for those reasons. Please look at page 2 of "Instructions" for an explanation of each type of discrimination.

| | |
|---|---|
| ☐ **Age:** Date of Birth: _____ | ☐ **Familial Status:** |
| ☐ **Arrest Record** | ☐ **Military Status:** ☐ Active Duty   ☐ Reserves   ☐ Veteran |
| ☐ **Conviction Record** | ☐ **Marital Status** ☐ Single   ☐ Married   ☐ Separated ☐ Divorced   ☐ Widowed |
| ☐ **Creed/ Religion:** Please specify: _____ | ☐ **National Origin:** Please specify: _____ |
| ☑ **Disability:** Please specify: heart condition _____ | ☐ **Predisposing Genetic Characteristic:** |
| ☐ **Domestic Violence Victim Status** | ☐ **Pregnancy-Related Condition:** Please specify: _____ |
| ☐ **Gender Identity or Expression, Including the Status of Being Transgender** | ☐ **Sexual Orientation:** Please specify: _____ |
| ☐ **Race/Color or Ethnicity:** Please specify: _____ ☐ Trait historically associated with race such as hair texture or hairstyle | ☐ **Sex:** Please specify: _____ Specify if the discrimination involved: ☐ Pregnancy   ☐ Sexual Harassment |
| ☐ **Use of Guide Dog, Hearing Dog, or Service Dog** | |

If you believe you were treated differently after you filed or helped someone file a discrimination complaint, participated as a witness to a discrimination complaint, or opposed or reported discrimination due to any category above, check below:

☐ **Retaliation:** How did you oppose discrimination: _____

If you believe you were discriminated against because of your relationship or association with a member or members of a protected category listed above, indicate the relevant category(ies) above, and check below:

☐ **Relationship or association**

**8. Acts of alleged discrimination:** *What did the person/company you are complaining against do? Check all that apply*

| | | | |
|---|---|---|---|
| ☐ Refused to hire me | ☐ Gave me a disciplinary notice or negative performance review | ☑ Denied my request for an accommodation for my disability, or pregnancy-related condition | ☐ Sexual harassment |
| ☐ Fired me/laid me off | ☐ Suspended me | ☐ Denied me an accommodation for domestic violence | ☐ Harassed or intimidated me on any basis indicated above |
| ☐ Demoted me | ☐ Did not call back after lay-off | ☐ Denied me an accommodation for my religious practices | ☐ Denied services or treated differently by a temp or employment agency |
| ☐ Denied me promotion/ pay raise | ☐ Paid me a lower salary than other co-workers doing the same job | ☐ Denied me leave time or other benefits | ☐ Denied a license by a licensing agency |
| ☐ Denied me training | ☐ Gave me different or worse job duties than other workers doing the same job | ☐ Discriminatory advertisement or inquiry or job application | ☐ Other: |

**9. Description of alleged discrimination**

*Tell us more about each act of discrimination that you experienced. Please include dates, names of people involved, and explain why you think it was discriminatory. TYPE OR PRINT CLEARLY.*
Per OMH I filed an RA for a medical condition on 10/28/21.  This was required due to not being vaccinated, in consult with my physician. I provided all of the required documentation from my physician on 10/28/21. My request was denied without explanation  Furthermore the denial misrepresents my assignment and duties. Finally i firmly believe this is an arbitrary decision.

*If you need more space to write, please continue writing on a separate sheet of paper and attach it to the complaint form.  DO NOT WRITE IN THE MARGINS OR ON THE BACK OF THIS FORM.*

# NYS Office of Mental Health

### Application to Request Reasonable Accommodation of a Disability

Application for reasonable accommodation may be made to the supervisor or the agency's *Designee for Reasonable Accommodation (DRA)*. If the request is made to the supervisor, the supervisor will forward the request to the DRA. All confidential information received by Department personnel pertaining to your request shall be handled as such. All medical information is confidential and maintained separately from personnel records.

### Section A

### (To be completed by employee and
### Returned to supervisor or DRA)

| Name | Civil Service Title | Job Title (if different) |
|---|---|---|
| kristin davis | RDH | |
| **Office/Unit** | **Work Location** | **Telephone Number(s)** |
| dental | Ancilary clinic | 7166028487 |
| **Email Address** | **Preferred Method of Communication** | |
| funwith31@ymail.com | phone or email is fine | |

I am requesting the following reasonable accommodation(s):

In lieu of having to get the covid 19 vaccine, I am requesting the following accomodations
1. To test weekly at the facility i work that offers testing on site.
2. To continue to wear full PPE while treating patients
3. Continue to wear mask while in the buliding

It is necessary for me to have this accommodation for the following reason(s):

Due to my cardiac medical condition. See documentation from MD for further information.
Thank you

| Employee Signature | Date |
|---|---|
| *[signature]* | 11-1-21 |

The employee should retain a copy of this form. The original is filed by the *DRA*.

1

## ELMWOOD VILLAGE PRIMARY CARE
### FREDERICK MICHAEL ELLIOTT, MD

**897 DELAWARE AVENUE, SUITE 102**
**BUFFALO, NY  14209**

PHONE 716-768-2006   FAX 716-768-2007
EMAIL DRELLIOTT@ELMWOODVILLAGEPRIMARYCARE.COM
ONLINE ELMWOODVILLAGEPRIMARYCARE.COM

October 11, 2021

Re: Kristin Davis, DOB 8/11/1979

To Whom It May Concern:

Due to Kristin's congenital cardiac condition known as a patient foramen ovale (PFO), she carries a small, theoretical increased risk of stroke as a result of her age and in combination with her medication. I support her decision to abstain from obtaining a COVID-19 vaccination after our discussion of the risks versus benefits of vaccination in the context of her medical conditions.

Reasonable safety measures in lieu of her receiving this vaccination include her undergoing frequent screening COVID testing while at work, maintaining distance from others, and wearing full PPE when performing patient care. Should she develop symptoms of COVID-10 or be exposed to COVID-19 she would need to isolate or quarantine appropriately based on CDC guidelines.

Sincerely,

Frederick Michael Elliott, MD

## Healthcare Provider Form

**TO BE FILLED OUT BY EMPLOYEE:**

| Name: Kristen M Davis | Title: |
|---|---|
| Facility: | Date of Accommodation Request: 10/11/2021 |

**TO BE FILLED OUT BY HEALTHCARE PROVIDER:**

The employee named above has requested a reasonable accommodation. Reasonable accommodation refers to the modifications or adjustments to the work environment or the manner or circumstances under which a job is performed which permit an employee to perform their job in a reasonable manner. To be entitled to a reasonable accommodation, an individual must have an impairment or disability that substantially limits job performance. Under the NYS Human Rights Law, a "disability" is defined as "a physical, mental or medical impairment resulting from anatomical, physiological, genetic or neurological conditions which prevents the exercise of a normal bodily function or is demonstrable by medically accepted clinical or laboratory diagnostic techniques."

| Date of Medical Exam: 10/11/2021 | Diagnosis:  Patent Foramen Ovale |
|---|---|

| Does this employee have a physical or mental impairment? | ☑ YES ☐ NO | Is this impairment: | ☑ Permanent ☐ Temporary |
|---|---|---|---|

If impairment is temporary, please indicate the duration of impairment:

*If additional space is needed to answer the following questions, please continue on a plain paper, note the question number, and attach to this form.*

1. Please describe, in detail, the functional limitations of the employee :

   Due to Kristin's congenital cardiac condition known as a ~~patent foramen ovale (PFO) she carries a small, theoretical~~ increased risk of stroke as a result of her age and in ~~combination with her medication. I support her decision to~~ abstain from obtaining a COVID-19 vaccination after our ~~discussion of the risks versus benefits of vaccination in~~ the context of her medical conditions.

2. Please review the attached job description and describe how and to what extent the employee's impairment affects his/her ability to perform the duties noted:

   A small theoretical risk exists in a stroke occurring in patients with multiple risk ~~factors including the presence of a patient~~ foramen ovale, older age group, concurrent ~~use of certain medication when these~~ patients receive a vaccination.

3. Please describe the reasonable accommodation that you believe would enable this employee to perform the essential duties of the position:

I support Kristin's decision to abstain from receiving the COVID-19 vaccination. Reasonable safety measures in lieu of her receiving this vaccination including her undergoing frequent COVID testing, maintaining distance from others, and wearing full PPE when performing patient care. Should she develop symptoms of COVID-19 or be exposed to COVID-19 she would need to isolate or quarantine appropriately based on CDC guidelines.

4. Would there be limitations on the tasks the employee can perform even with an accommodation?

I see no limitations of her tasks given the measures taken above.

Please PRINT the following information:

| Healthcare Provider Name: | Title: |
|---|---|
| FREDERICK M ELLIOTT, MD | Primary Care Physician |

| Healthcare Provider's Address: |
|---|
| 897 Delaware Avenue, Suite 102; Buffalo, NY 14209 |

Healthcare Provider Signature: _____

Date: 10/11/2021



**NEW YORK STATE OF OPPORTUNITY.** | **Office of Mental Health**

KATHY HOCHUL                ANN MARIE T. SULLIVAN, M.D.          MOIRA TASHJIAN, MPA
Governor                         Commissioner                  Executive Deputy Commissioner

December 30, 2021

Kristin Davis
69 Irving Terrace
Tonawanda, NY 14223

Dear Ms. Davis:

This is to inform you of our determination regarding your application for reasonable accommodation of a disability, which was received on November 1, 2021. You requested an exemption from the COVID-19 Vaccination Mandate effective November 1, 2021.

We have assessed your application for a reasonable accommodation of a disability. A thorough review of documentation you provided along with analysis of information obtained during the interactive process has been completed.

The Office of Mental Health, Buffalo Psychiatric Center, is unable to accommodate your request to be exempt from the COVID-19 Vaccination mandate effective November 1, 2021. Employee vaccination is imperative to safeguard the health, safety, and welfare of OMH's patients and residents and to prevent staffing shortages due to COVID-19 outbreaks. Patients and residents of OMH facilities are particularly vulnerable to COVID-19 and unvaccinated staff have an unacceptably high risk of both acquiring COVID-19 and transmitting the virus to colleagues and/or vulnerable patients and residents. COVID-19 transmission has caused and will cause severe illness and death to patients, residents, and OMH staff. As a Dental Hygienist assigned to Buffalo Psychiatric Center, an essential function of your position can put you in routine contact with hospital patients and patient care staff. Individuals who are in such positions and are unvaccinated pose a significant risk of substantial harm to themselves and others. Thus, your inability to perform an essential function of your job safely would result in an undue hardship by impacting the safe and efficient operation of the facility.

There is no alternate accommodation identified that would ensure the health and safety of the patients and staff and reduce the level of a direct health and safety threat to our patients and other staff at the facility. Additionally, please note your reasonable accommodation was reviewed considering factors including, but not limited to your current title, shift, work location, duties, and operational needs. Attached is the Notification of Denial of Request for Accommodation. This form explains your rights. If you have further questions, please contact your Human Resources Office.

Sincerely,

Michael Izzano
Director, Bureau of Employee Relations

cc: T. Blanc

**Precautions to prevent transmission**

In order to be able to perform my duties as listed we are also taking all of the following precautions to protect myself, patients and staff from Covid.

1. Check in upon entrance of building including temperature checks, and online screening process before shift, monitoring my own symptoms
2. Weekly covid testing on site before shift starts
3. FULL PPE masking, gloves, gowns, N95, HALO mask during appropriate procedures, disposable scrubs, shoe covers and head covers.
4. Proper room ventilation including negative pressure, operation of HEPA filtration system, fogging of the operatory to remove aerosols
5. All patients go through screening prior to appt including temperature and testing depending their procedures.
6. Reduced patient traffic.
7. Patient interaction is reduced to only the necessary contact while providing care. All other time I remain isolated in my office to prevent unnecessary contact with patients and staff.

**Performance Evaluation Program**
Administrative, Operational, Institutional Services Units,
and Division of Military and Naval Affairs Unit

**ANNUAL PERFORMANCE
EVALUATION FORM**

### INSTRUCTIONS TO SUPERVISORS

| AT THE START OF THE EVALUATION PERIOD Complete Sections 1 and 2A | AT THE MIDPOINT OF THE EVALUATION PERIOD Complete Section 3 | AT THE END OF THE EVALUATION PERIOD Complete Sections 2B, 4, 5, 6 and 7 |
|---|---|---|

**SECTION 1 – EMPLOYEE IDENTIFICATION**
Enter the following information:

Employee's Name    **Davis, Kristin**
                   **1/19/2006**

Agency/Facility   OMH / Buffalo Psychiatric Center

Division/Section   **Dental Hygienist    NU: 04**
                   **Location:Ancillary**
                   **Supervisor: Sievenpiper, Wendy**

Title: _____

Salary Grade: _____

Evaluation Period From: _____    To: _____

Employee's Negotiating Unit   __Administrative Services   __Institutional Services   __Operational Services   __DMNA

---

**SECTION 2A – PERFORMANCE PROGRAM**
List the important tasks of the job and briefly describe how you expect each to be performed. Your expectations should be expressed in terms of quality and/or quantity where possible.

1.
2.
3.   *See attached*
4.
5.

**SECTION 2B – PERFORMANCE APPRAISAL**
Describe the employee's performance in accomplishing the tasks specified in Section 2A. Explain how the employee's performance met, exceeded or failed to meet hour expectations.

1.
2.
3.   *See attached*
4.
5.

I received a copy of this performance program on _____ *01-04-22* _____
                                                    **(Date)**

Employee: _____ *CD* _____
                **(Initials)**

**(Attach additional sheets, if necessary)**

---

**SECTION 3 – SIX-MONTH RECERTIFICATION (OPTIONAL)**

We met within one month before or after the approximate midpoint of the rating period to discuss the employee's performance, and to reaffirm or revise the performance program (if revised, changes have been reviewed and approved, and revisions are attached). If a rating were assigned today based upon service to date, I would propose that it be
__X__ Satisfactory   ____ Unsatisfactory (check one). This is not a rating; it is not appealable.

Supervisor _____ *(signature)* _____   *1/04/2022*
                  **(Signature)**              **(Date)**

Employee _____ *(signature)* _____   *1/04/2022*
                **(Signature)**              **(Date)**

**SECTION 4 – SUPERVISOR'S COMMENTS**          **Employee's Name:**

Comment on other aspects of the employee's performance (such as skills, behaviors, personal characteristics and time and attendance patterns) which have affected the employee' performance or the performance of other employees. Suggest ways in which performance can be improved.

Ms. Davis actively participates as a team member in promoting oral health as part of treatment and recovery. She accommodates patient's individual needs and is instrumental in providing patient education.

Prepared by: W. Stevenpiper, DDS _____ (Signature) _____ 01 04 2022

(Printed or Typed Name)          (Signature)          (Date)

**SECTION 5 – PERFORMANCE RATING**

Check the rating which best summarizes the employee's performance. A rating of "Unsatisfactory" must be supported by specific explanation and justification.

**SATISFACTORY:** This is a broad category which covers a wide range of employees, all of whom are performing acceptably. It is the expected and usual level of performance. The employee generally meets performance expectations as specified in the performance program for all tasks and performs in a good competent manner. This is the level which can minimally be expected from an employee in order for the work of the unit to function effectively.

The employee's performance may also be characterized as meeting minimal performance expectations for the job yet there may be areas of performance which should be improved. The employee may meet expectations for certain tasks or assignments, but some assignments may require extra follow-up and direction by the supervisor. It is only when the employee's performance clearly shows that it is below the expected performance that a rating other than "Satisfactory" should be considered.

NOTE: Because this rating covers a wide range of performance, supervisors may want to consider the length of time the employee has been in the job as appropriate (i.e., employees in the same job title may be performing satisfactorily, but at different levels due to length of time and/or experience on the job).

**UNSATISFACTORY:** The employee clearly does not meet performance expectations for one or more tasks, not even at a minimally acceptable level. The employee requires significant extra direction, or the supervisor finds it necessary to avoid assigning normal tasks to the employee. The employee cannot be relied upon to carry out critical assignments in a timely or effective fashion. There is need for immediate and significant improvement in performance. Appeal Rights: Only ratings of UNSATISFACTORY are appealable. Disputes concerning such issues as an employee's performance program, and the rating appeals process are not subject to appeal. Employees must file an appeal within 15 calendar days of the receipt of an UNSATISFACTORY rating. Appeals forms and procedural information are available from your personnel office. Employees have the right to a personal appearance and to CSEA-designated representation before the Appeals Board.

**SECTION 6 – REVIEW AND APPROVAL**

The employee's rating is not final until it is reviewed and approved.

Approved by: Andrea deRosas, M.D. _____ (Signature) _____ 1/4/22

(Printed or Typed Name)          (Signature)          (Date)

**SECTION 7 – EMPLOYEE COMMENTS**

I met with my supervisor on __1/4/22__ to discuss my work performance. I have read this evaluation and discussed it with my supervisor. My signature does not necessarily signify that I agree with this evaluation.

My written comments concerning this evaluation follow (optional):

N/A

_____          __1-4-22__
(Signature)          (Date)   · DDS-4 (4/94)

## Signature (Declaration or Oath)

Based on the information contained in this form, I charge the herein named respondent(s) with an unlawful discriminatory practice, in violation of the New York State Human Rights Law.

By filing this complaint, I understand that I am also filing my employment complaint with the United States Equal Employment Opportunity Commission under the Americans With Disabilities Act (covers disability related to employment), Title VII of the Civil Rights Act of 1964, as amended (covers race, color, religion, national origin, sex relating to employment), and/or the Age Discrimination in Employment Act, as amended (covers ages 40 years of age or older in employment). This complaint will protect my rights under federal law.

I hereby authorize the New York State Division of Human Rights to accept this complaint on behalf of the U.S. Equal Employment Opportunity Commission, subject to the statutory limitations contained in the aforementioned law.

I have not filed any other civil action, nor do I have an action pending before any administrative agency, under any state or local law, based upon this same unlawful discriminatory practice. (If you have another action pending and still wish to file, please contact our office to discuss.)
**PLEASE INITIAL** kd

Human Rights Law § 297.1 requires that a complaint filed with the Division of Human Rights must be "under oath or by declaration." **You must complete either the "declaration" or "oath" sections below.** The declaration requires only your signature and does not need to be notarized. The oath requires that you sign it before a notary.

| DECLARATION |
|---|

I affirm this 3___ day of january_____ (month), 2022____ (year) at buffalo_____ (city), ny____ (state), under penalties of perjury, that I am the complainant herein; that I have read (or had read to me) the foregoing complaint and know the content thereof; that the same is true of my own knowledge except as to the matters therein stated on information and belief; and that as to those matters, I believe the same to be true.

kristin davis
_____
[Complainant name]

| OATH |
|---|

STATE OF NEW YORK        )
                          )  SS:
COUNTY OF                 )

_____, being duly sworn, deposes and says: that I am the complainant herein; that I have read (or had read to me) the foregoing complaint and knows the content thereof; that the same is true of my own knowledge except as to the matters therein stated on information and belief; and that as to those matters, I believes the same to be true.

_____
Complainant signature

Subscribed and sworn to
before me this        day
of              , 20

_____
Signature of Notary Public

*Please note: Once this form is completed and returned to the New York State Division of Human Rights, it becomes a legal document and an official complaint with the Division.*

EXHIBIT 2

*Received SAT Nov 12*

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

New York District Office
33 Whitehall St, 5th Floor
New York, NY 10004
(929) 506-5270
Website: www.eeoc.gov

## DETERMINATION AND NOTICE OF RIGHTS
(This Notice replaces EEOC FORMS 161 & 161-A)

Issued On: 11/08/2022

**To:** Kristin Davis
69 Irving Terrace
Buffalo, NY 14223

Charge No: 16G-2022-04015

EEOC Representative and email:     Holly Shabazz
S/L Program Manager
holly.shabazz@eeoc.gov

### DETERMINATION OF CHARGE

The EEOC issues the following determination: The EEOC will not proceed further with its investigation and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

The EEOC has adopted the findings of the state or local fair employment practices agency that investigated your charge.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission,

Digitally Signed By:Timothy Riera
11/08/2022
Timothy Riera
Acting District Director

**Cc:**
New York State, Office Of Mental Health
Office Of General Counsel
44 Holland Avenue
Albany, NY 12229

Please retain this notice for your records.

EXHIBIT 3



A new Part 557 titled COVID-19 Vaccination Program, is added to read as follows:

**557.1 Background and intent.**

(a) COVID-19 is an unpredictable disease that can cause serious illnesses and death. In response to this increased public health threat, New York must take active steps to prevent and control transmission of COVID-19. The seriousness of the continuing threat and the failure to achieve acceptable vaccination rates through voluntary programs necessitate further action.

**557.2 Legal Base.**

(a) Section 7.07 of the Mental Hygiene Law charges the Office of Mental Health with the responsibility for seeing that persons with mental illness are provided with care and treatment, and that such care, treatment and rehabilitation is of high quality and effectiveness.

(b) Section 7.09 of the Mental Hygiene Law gives the Commissioner of the Office of Mental Health the power and responsibility to adopt regulations that are necessary and proper to implement matters under the Commissioner's jurisdiction.

(c) Section 31.04 of the Mental Hygiene Law grants the Commissioner of Mental Health the power and responsibility to adopt regulations to effectuate the provisions and purposes of Article 31 of the Mental Hygiene Law, including procedures for the issuance and amendment of operating certificates, and for setting standards of quality and adequacy of facilities.

**557.3 Applicability.**

(a) This Part applies to Hospitals as defined in Part 556.4(d) of this Title.

**557.4 Definitions pertaining to this Part.**

(a) *Commissioner* shall mean the Commissioner of Mental Health.

(b) *COVID-19 vaccine* or *vaccine* shall mean a vaccine currently licensed for immunization and distribution in the United States by the Food and Drug Administration (FDA) for active immunization for the prevention of COVID-19 or authorized for such use by the FDA pursuant to an Emergency Use Authorization (EUA) or as an Emergency Investigational New Drug (EIND).

(c) *Fully Vaccinated* shall mean fully vaccinated for COVID-19 ≥ 2 weeks after receiving either (1) the second dose in a 2-dose series (e.g., Pfizer-BioNTech or Moderna), or (2) a single-dose vaccine (e.g.,

Johnson & Johnson [J&J]/Janssen), authorized for emergency use or approved by the U.S. Food and Drug Administration, and holds an emergency use listing by the World Health Organization.

(d) *Hospital* shall mean a hospital named in Mental Hygiene Law section 7.17(b), excluding the Nathan S. Kline Institute for Psychiatric Research.  Hospitals shall also mean a program operated pursuant to Parts 580, 582, or 590 of this Title.

(e) *Office* shall mean the Office of Mental Health.

(f) *Staff* shall mean all persons employed or affiliated with a Hospital, whether paid or unpaid, including but not limited to employees, members of the medical, nursing, and other treatment staff, contract staff, students, and volunteers.


**557.5 Testing and Vaccination Requirements for Hospitals.**

(a) All Staff who work in Hospitals will be required to be vaccinated with at least one vaccine dose against COVID-19 by November 1, 2021 and shall be Fully Vaccinated by December 10, 2021.

(b) Commencing on October 12, 2021, all Staff who work in Hospitals who are not Fully Vaccinated shall be tested for COVID-19 pursuant to the provisions herein for those who are granted a reasonable accommodation.

(c) A reasonable accommodation may be made for Staff who have a documented pre-existing health condition that prevents them from complying with the vaccine requirements herein. When a reasonable accommodation is approved for a Staff member, they must comply with the following testing provisions.

(d)  Staff who have been granted such a reasonable accommodation are required to undergo diagnostic screening testing. Staff may choose either antigen or molecular tests to satisfy this requirement but must be tested at least once weekly. Any test used must either have Emergency Use Authorization by the U.S. Food and Drug Administration or be operating per the Laboratory Developed Test requirements of the U.S. Centers for Medicare and Medicaid Services.

(e) Any Staff who work in Hospitals who do not comply with the provisions of this Part shall not be permitted to report to work.

(f) Staff for whom a positive test result is received must comply with New York State Department of Health and Office regulations and guidance applicable to those who receive a positive test result.

(g) By November 1, 2021, Hospitals shall verify the vaccination status of all Staff.  Each Hospital shall require Staff to produce documentation to show vaccine administration. Acceptable documentation of vaccination status shall consist of one of the following:

> (1) a COVID 19 vaccination record card issued by the Centers for Disease Control and Prevention or equivalent, including the name of the person vaccinated, date of birth, type of vaccine provided and date(s) of administration.

> (2) documentation of COVID-19 vaccination from a health care provider; or

(3) a digital record such as the New York State Excelsior Pass that includes a QR code that when scanned displays the name of the person vaccinated, date of birth, type of vaccine provided, and date(s) of administration.

(h) All Staff who are not fully vaccinated, or for whom vaccine status is unknown or documentation is not provided, must be considered unvaccinated.

(i) Hospitals shall maintain records of their compliance with the requirements of this Part.

EXHIBIT 4

# NYS Office of Mental Health

### Application to Request Reasonable Accommodation of a Disability

Application for reasonable accommodation may be made to the supervisor or the agency's *Designee for Reasonable Accommodation (DRA)*. If the request is made to the supervisor, the supervisor will forward the request to the DRA. **All confidential information received by Department personnel pertaining to your request shall be handled as such.** All medical information is confidential and maintained separately from personnel records.

### Section A

### (To be completed by employee and
### Returned to supervisor or DRA)

| Name | Civil Service Title | Job Title (if different) |
|---|---|---|
| kristin davis | RDH | |
| Office/Unit | Work Location | Telephone Number(s) |
| dental | Ancilary clinic | 7166028487 |
| Email Address | Preferred Method of Communication | |
| funwith31@ymail.com | phone or email is fine | |

| I am requesting the following reasonable accommodation(s): |
|---|
| In lieu of having to get the covid 19 vaccine, I am requesting the following accomodations<br>1. To test weekly at the facility i work that offers testing on site.<br>2. To continue to wear full PPE while treating patients<br>3. Continue to wear mask while in the buliding |

| It is necessary for me to have this accommodation for the following reason(s): |
|---|
| Due to my cardiac medical condition..See documentation from MD for further information.<br>Thank you |

| Employee Signature | Date |
|---|---|
| | 11-1-21 |

The employee should retain a copy of this form. The original is filed by the *DRA*.

Application to Request Reasonable Accommodation of Disability

# Section C

**Notification of Need for Additional Information**
**(To be completed by the *DRA* and returned to the employee)**

| **Name of Employee:** |
| Kristin Davis |

We are continuing to assess your request. To make a determination, we need the following information:

☐ **Medical Documentation**

Please inform your doctor of your application for an accommodation and have your doctor send us medical documentation, indicating the limitations that your disability would place on your job performance. We have enclosed a copy of the duties description for your title and/or a list of the essential functions of your position for the doctor's reference.

Information should be sent by the following date:      **November 8, 2021**

The requested information should be provided to the agency's Designee for Reasonable Accommodation (DRA).

**All medical information pertaining to Reasonable Accommodation must be kept confidential by the Agency.**

☒ Other

| Explain: |
| Please submit Section A Application to Request Reasonable Accommodation of a Disability |

☐ We require no additional information from you at this time.

The [agency]'s review process will include an evaluation of all relevant information. This may include an interview with you and/or your supervisor. After completion of the review, you will be informed in writing by the Commissioner of the Department, or the DRA, regarding the Department's decision.

We anticipate that the decision will be made by (date):  _____

If you have any questions, please contact Yahve Bien-Aime.

| Signature of DRA | Date |
| --- | --- |
| Yahve Bien-Aime | 11-1-21 |

**The employee should retain a copy of this form.  The original is filed by Yahve Bien-Aime.**

# ELMWOOD VILLAGE PRIMARY CARE
## FREDERICK MICHAEL ELLIOTT, MD

### 897 DELAWARE AVENUE, SUITE 102
### BUFFALO, NY   14209

PHONE 716-768-2006   FAX 716-768-2007
EMAIL DRELLIOTT@ELMWOODVILLAGEPRIMARYCARE.COM
ONLINE ELMWOODVILLAGEPRIMARYCARE.COM

October 11, 2021

Re: Kristin Davis, DOB 8/11/1979

To Whom It May Concern:

Due to Kristin's congenital cardiac condition known as a patient foramen ovale (PFO), she carries a small, theoretical increased risk of stroke as a result of her age and in combination with her medication. I support her decision to abstain from obtaining a COVID-19 vaccination after our discussion of the risks versus benefits of vaccination in the context of her medical conditions.

Reasonable safety measures in lieu of her receiving this vaccination include her undergoing frequent screening COVID testing while at work, maintaining distance from others, and wearing full PPE when performing patient care. Should she develop symptoms of COVID-10 or be exposed to COVID-19 she would need to isolate or quarantine appropriately based on CDC guidelines.

Sincerely,

Frederick Michael Elliott, MD

## Healthcare Provider Form

**TO BE FILLED OUT BY EMPLOYEE:**

| Name: Kristen M Davis | Title: |
|---|---|
| Facility: | Date of Accommodation Request: 10/11/2021 |

**TO BE FILLED OUT BY HEALTHCARE PROVIDER:**

The employee named above has requested a reasonable accommodation. Reasonable accommodation refers to the modifications or adjustments to the work environment or the manner or circumstances under which a job is performed which permit an employee to perform their job in a reasonable manner. To be entitled to a reasonable accommodation, an individual must have an impairment or disability that substantially limits job performance. Under the NYS Human Rights Law, a "disability" is defined as "a physical, mental or medical impairment resulting from anatomical, physiological, genetic or neurological conditions which prevents the exercise of a normal bodily function or is demonstrable by medically accepted clinical or laboratory diagnostic techniques."

| Date of Medical Exam: 10/11/2021 | Diagnosis: **Patent Foramen Ovale** | |
|---|---|---|
| Does this employee have a physical or mental impairment? | ☑ YES ☐ NO | Is this impairment: ☑ Permanent ☐ Temporary |

If impairment is temporary, please indicate the duration of impairment:

*If additional space is needed to answer the following questions, please continue on a plain paper, note the question number, and attach to this form.*

1. Please describe, in detail, the functional limitations of the employee:

   Due to Kristin's congenital cardiac condition known as a ~~patent foramen ovale (PFO) she carries a small, theoretical~~ increased risk of stroke as a result of her age and in ~~combination with her medication. I support her decision to~~ abstain from obtaining a COVID-19 vaccination after our ~~discussion of the risks versus benefits of vaccination in~~ the context of her medical conditions.

2. Please review the attached job description and describe how and to what extent the employee's impairment affects his/her ability to perform the duties noted:

   A small theoretical risk exists in a stroke occurring in patients with multiple risk factors including the presence of a patent foramen ovale, older age group, concurrent ~~use of certain medication when these~~ patients receive a vaccination.

3.  Please describe the reasonable accommodation that you believe would enable this employee to perform the essential duties of the position:

    I support Kristin's decision to abstain from receiving the COVID-19 vaccination. Reasonable safety measures in lieu of her receiving this vaccination including her undergoing frequent COVID testing, maintaining distance from others, and wearing full PPE when performing patient care. Should she develop symptoms of COVID-19 or be exposed to COVID-19 she would need to isolate or quarantine appropriately based on CDC guidelines.

4.  Would there be limitations on the tasks the employee can perform even with an accommodation?

    I see no limitations of her tasks given the measures taken above.

Please PRINT the following information:

| Healthcare Provider Name:<br><br>FREDERICK M ELLIOTT, MD | Title:<br><br>Primary Care Physician |
|---|---|
| Healthcare Provider's Address:<br><br>897 Delaware Avenue, Suite 102;<br>Buffalo, NY  14209 | |

Healthcare Provider Signature: _____          10/11/2021
                                                                 Date: _____

EXHIBIT 5



| | | |
|---|---|---|
| **KATHY HOCHUL** | **ANN MARIE T. SULLIVAN, M.D.** | **MOIRA TASHJIAN, MPA** |
| Governor | Commissioner | Executive Deputy Commissioner |

December 30, 2021

Kristin Davis
69 Irving Terrace
Tonawanda, NY 14223

Dear Ms. Davis:

This is to inform you of our determination regarding your application for reasonable accommodation of a disability, which was received on November 1, 2021. You requested an exemption from the COVID-19 Vaccination Mandate effective November 1, 2021.

We have assessed your application for a reasonable accommodation of a disability. A thorough review of documentation you provided along with analysis of information obtained during the interactive process has been completed.

The Office of Mental Health, Buffalo Psychiatric Center, is unable to accommodate your request to be exempt from the COVID-19 Vaccination mandate effective November 1, 2021. Employee vaccination is imperative to safeguard the health, safety, and welfare of OMH's patients and residents and to prevent staffing shortages due to COVID-19 outbreaks. Patients and residents of OMH facilities are particularly vulnerable to COVID-19 and unvaccinated staff have an unacceptably high risk of both acquiring COVID-19 and transmitting the virus to colleagues and/or vulnerable patients and residents. COVID-19 transmission has caused and will cause severe illness and death to patients, residents, and OMH staff. As a Dental Hygienist assigned to Buffalo Psychiatric Center, an essential function of your position can put you in routine contact with hospital patients and patient care staff. Individuals who are in such positions and are unvaccinated pose a significant risk of substantial harm to themselves and others. Thus, your inability to perform an essential function of your job safely would result in an undue hardship by impacting the safe and efficient operation of the facility.

There is no alternate accommodation identified that would ensure the health and safety of the patients and staff and reduce the level of a direct health and safety threat to our patients and other staff at the facility. Moreover, it has come to our attention that you received the first dose of the COVID-19 vaccination prior to your reasonable accommodation request; therefore, your request is not applicable. Additionally, please note your reasonable accommodation was reviewed considering factors including, but not limited to your current title, shift, work location, duties, and operational needs. Attached is the Notification of Denial of Request for Accommodation. This form explains your rights. If you have further questions, please contact your Human Resources Office.

Sincerely,

Michael Izzano
Director, Bureau of Employee Relations

# EXHIBIT 6

 **Office of Mental Health**

| **KATHY HOCHUL** | **ANN MARIE T. SULLIVAN, M.D.** | **MOIRA TASHJIAN, MPA** |
|---|---|---|
| Governor | Commissioner | Acting Executive Deputy Commissioner |

To:         Kristen Davis
From:    Dr. Beatrix Souza, Executive Director
Date:      December 30, 2021
Sent Certified 7021 0950 0000 7896 0181 and via regular US Mail

On October 6, 2021, OMH issued Emergency Regulations that require all staff who work in OMH-operated hospitals, without an approved or pending accommodation, to be vaccinated with at least one vaccine dose against COVID-19 by Monday, November 1, 2021, and to be fully vaccinated by Friday, December 10, 2021.  This mandate applies to all psychiatric center employees regardless of leave status.

You are receiving this notice because you had a pending RA prior to November 1, 2021. You were temporarily exempted from the mandate until the merits of your accommodation were decided.  Our records indicate that your application for an accommodation was denied and that your vaccination status is either unvaccinated or unknown.  As such, you are required to receive at least one vaccine dose by January 5, 2022.  Failure to receive at least one dose of the COVID-19 vaccine by January 5, 2022, and to be fully vaccinated by February 4, 2022, will result in immediate suspension without pay pending termination from State service.

If you have not received your COVID-19 vaccination you may do so through one of two means:

1. Obtain a COVID-19 vaccine from any vaccination site.
2. Obtain a COVID-19 vaccine from any OMH Psychiatric Center.

If you are unsure about receiving the COVID-19 vaccination there are excellent resources available through Centers for Disease Control and Prevention Coronavirus (COVID-19) Website   https://www.cdc.gov/coronavirus/2019-ncov/index.html   and/or   Occupational Safety and Health Administration COVID-19 Website https://www.osha.gov/SLTC/covid-19/ to help address any concerns you may have.

EXHIBIT 7

**Precautions to prevent transmission**

In order to be able to perform my duties as listed we are also taking all of the following precautions to protect myself, patients and staff from Covid.

1. Check in upon entrance of building including temperature checks, and online screening process before shift, monitoring my own symptoms
2. Weekly covid testing on site before shift starts
3. FULL PPE masking, gloves, gowns, N95, HALO mask during appropriate procedures, disposable scrubs, shoe covers and head covers.
4. Proper room ventilation including negative pressure, operation of HEPA filtration system, fogging of the operatory to remove aerosols
5. All patients go through screening prior to appt including temperature and testing depending their procedures.
6. Reduced patient traffic.
7. Patient interaction is reduced to only the necessary contact while providing care. All other time I remain isolated in my office to prevent unnecessary contact with patients and staff.