UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

KRISTIN DAVIS,

                              Plaintiff,

v.

STATE OF NEW YORK, OFFICE OF
MENTAL HEALTH (BUFFALO
PSYCHIATRIC CENTER) and ANN
MARIE T. SULLIVAN, M.D.
COMMISSIONER OF THE STATE OF
NEW YORK OFFICE OF MENTAL
HEALTH, in her official capacity,

                              Defendants.
_____

**REPORT AND RECOMMENDATION**

Case No. 1:23-cv-00116-JLS-JJM

       This case has been referred to me by Hon. John L. Sinatra, Jr. for supervision of all pretrial proceedings, including the preparation of a Report and Recommendation on dispositive motions [7].[1] Plaintiff Kristin Davis commenced this action against the defendants State of New York, Office of Mental Health (Buffalo Psychiatric Center), and Ann Marie T. Sullivan, M.D., Commissioner of the State of New York Office of Mental Health, in her official capacity, alleging claims under the Americans with Disabilities Act ("ADA"), 42 U.S.C. §12111 *et seq.*, and the Rehabilitation Act of 1973, 29 U.S.C. §794, *et seq.*, for subjecting plaintiff to disparate treatment, failure to reasonably accommodate her disability, and suspending her without pay and terminating her employment. Amended Verified Complaint ("Amended Complaint") [12], ¶¶ 1, 63, 68, 73. Following defendants' first motion to dismiss [6], plaintiff filed an Amended Complaint [12].

---

[1]     Bracketed references are to CM/ECF docket entries. Page references are to CM/ECF pagination (upper right corner of the page).

Before the court is defendant's motion [14] to dismiss the Amended Complaint [12] pursuant to Fed. R. Civ. P. ("Rule") 12(b)(6) for failure to state a claim upon which relief can be granted. For the following reasons, I recommend that the motion be granted.

**BACKGROUND**

Plaintiff worked as a dental hygienist for defendant State of New York Office of Mental Health ("OMH") since approximately November 5, 2005. Amended Complaint [12], ¶ 8. Her "primary job functions included performing oral examinations, oral prophylactic care, and providing assistance to the dentist in virtually all facts of patient care at the OMH's dental clinic". Id., ¶ 9.

Plaintiff was diagnosed in 2016 with a condition known as patent foramen ovale ("PFO"). Id., ¶¶ 10-11. As a result of this condition, she "experiences difficulty breathing and is prone to lightheadedness". Id., ¶ 12. She has "experienced these symptoms both at work and at home". Id., ¶ 14. When they occur, plaintiff "needs to stop whatever she is doing". Id., ¶ 12. Plaintiff "is also at an increased risk of stroke, particularly in light of her age" "as a direct consequence" of her PFO condition. Id., ¶ 13.

OMH implemented a "mandatory COVID-19 vaccination program" on October 6, 2021. Id., ¶ 17. The policy required "[a]ll [s]taff who work in [h]ospitals" to be "[f]ully [v]accinated by December 10, 2021". Id., ¶ 18(a). The policy provided further that "[a] reasonable accommodation may be made for [s]taff who have a documented pre-existing health condition that prevents them from complying with the vaccine requirements". Id., ¶ 18(c). As a dental hygienist at OMH's Buffalo Psychiatric Center, she was subject to the policy. Id., ¶¶ 16-21. Plaintiff applied on November 1, 2021 to receive a reasonable accommodation. Id., ¶ 21. With her application, she submitted a letter from her primary care physician, stating:

> "Due to [plaintiff's] congenital cardiac condition known as a [PFO], she carries a small, theoretical increased risk of stroke as a result of her age and in combination with her medication. I support her decision to abstain from obtaining a COVID-19 vaccination after our discussion of the risks versus benefits of vaccination in the context of her medical conditions.
>
> Reasonable safety measures in lieu of her receiving this vaccination include her undergoing frequent screening COVID testing [sic] while at work, maintaining distance from others, and wearing full PPE when performing patient care. Should she develop symptoms of COVID-10 [sic] or be exposed to COVID-19 she would need to isolate or quarantine appropriately based on CDC guidelines."

Id., ¶ 21; Amended Complaint, Exhibit 4 [12-4] at 4.

On December 30, 2021, defendants denied plaintiff's request for exemption from the vaccination mandate:

> "The Office of Health, Buffalo Psychiatric Center, is unable to accommodate your request to be exempt from the COVID-19 Vaccination mandate effective November 1, 2021. . . . As a Dental Hygienist assigned to Buffalo Psychiatric Center, an essential function of your position can put you in routing contact with hospital patients and patient care staff. Individuals who are in such positions and are unvaccinated pose a significant risk of substantial harm to themselves and others. Thus, your inability to perform an essential function of your job safely would result in an undue hardship by impacting the safe and efficient operation of the facility.
>
> There is no alternate accommodation identified that would ensure the heath and safety of the patients and staff and reduce the level of a direct health and safety threat to our patients and other staff at the facility. Moreover, it has come to our attention that you received the first dose of the COVID-19 vaccination prior to your reasonable accommodation request; therefore, your request is not applicable."

Id., ¶ 24; Amended Complaint, Exhibit 5 [12-5] at 2.

## DISCUSSION

A.   **Dismissal Standard**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face . . . . A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully . . . . Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." Id. (internal quotations omitted).

Moreover, although "a court must accept as true all of the allegations contained in a complaint", that maxim is "inapplicable to legal conclusions". Id. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. *See also* Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009) (*citing* Iqbal, supra).

In deciding whether to dismiss a complaint under Rule 12(b)(6), this court "is generally limited to the facts as presented within the four corners of the complaint, to documents attached to the complaint, or to documents incorporated within the complaint by reference". Taylor v. Vermont Department of Education, 313 F.3d 768, 776 (2d Cir. 2002).


B.   **Elements of ADA and Rehabilitation Act Claims**

The ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity".

42 U.S.C.A. §12132.  The Rehabilitation Act similarly "prohibits programs and activities receiving federal financial assistance from excluding, denying benefits to, or discriminating against 'otherwise qualified' disabled individuals".  McElwee v. County of Orange, 700 F.3d 635, 640 (2d Cir. 2012), citing 29 U.S.C. § 794(a).  The Rehabilitation Act incorporates the definitions of the ADA "to determine whether this section has been violated".  29 U.S.C. § 794(d).

"Because the standards adopted by the two statutes are nearly identical, we consider the merits of these claims together".  McElwee, 700 F.3d at 640; *see also* Shine v. New York City Housing Authority, 2020 WL 5604048, *2 (S.D.N.Y. 2020).  The ADA defines "disability" as "a physical or mental impairment that substantially limits one or more major life activities", "a record of such an impairment", or "being regarded as having such an impairment".  42 U.S.C. § 12102(1)(A-C).  Examples of major life activities are "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working".  42 U.S.C. § 12102(2)(A).  In order to state a claim under the ADA, and to survive a motion to dismiss, plaintiff's complaint must contain facts indicating that his impairment "substantially limits one or more of his major life activities".  Cullen v. Verizon Communications, 2015 WL 4508711, *2 (W.D.N.Y. 2015).

The common element to the tests for intentional discrimination claims and failure to accommodate claims is whether plaintiff has a disability as defined by the ADA.  *See* Capobianco v. City of New York, 422 F.3d 47, 56 (2d Cir. 2005); McBride v. BIC Consumer Products Manufacturing Co., Inc., 583 F.3d 92, 96-97 (2d Cir. 2009).  I agree with defendants that plaintiff has not adequately pled facts sufficient to plausibly allege that she has such a

disability. See Defendants' Memorandum of Law [14-1] at 5-7. Because this issue is dispositive of plaintiff's claims, I do not address the parties' remaining arguments.

**C.     Plaintiff Did Not Sufficiently Allege that her Medical Condition Substantially Limits a Major Life Activity**

To determine whether a plaintiff has a disability as defined by the ADA, "the Supreme Court compels district courts to follow a three-step process to conclude: (1) whether plaintiff had an impairment; (2) whether the impairment affected a major life activity within the meaning of the ADA; and (3) whether that major life activity was substantially limited by the impairment". LaFace v. Eastern Suffolk Boces, 2020 WL 2489774, *9 (E.D.N.Y. 2020), citing Bragdon v. Abbott, 524 U.S. 624, 641 (1998). Defendants focus on the final element – whether plaintiff has adequately alleged that her impairment substantially limits a major life activity. See Defendants' Memorandum of Law [14-1] at 5-6. Specifically, defendants argue:

> "This case mirrors the Smeraldo case as Plaintiff has, once again, pled with no specificity as to how her PFO significantly limits or impacts her major life activities. Plaintiff alleges that she experiences difficulty breathing and is prone to lightheadedness. Dkt. 12, ¶12. These are impermissibly vague as it does not elaborate on *how* these substantially limit major life activities. Plaintiff has not supported a finding that she has an alleged disability that falls under the definition of the ADA and [Rehabilitation Act]. This pleading defect is fatal to all of Plaintiff's causes of action and thus, the Amended Complaint must be dismissed in its entirety."

Id. at 6-7. I agree that plaintiff's allegations are not sufficient to plead a substantial limitation. Because all of her claims allege violations of the ADA and/or the Rehabilitation Act, I agree that plaintiff's Amended Complaint must be dismissed in its entirety. See Amended Complaint [12], ¶¶ 61-75.

Whether plaintiff has plausibly alleged a substantial limitation of a major life activity is a threshold question that must be determined in order for her claims to proceed. See

Earl v. Good Samaritan Hospital of Suffern, 2021 WL 4462413, *5 (S.D.N.Y. 2021), ("[a]s a threshold matter, the Court must determine whether Plaintiff has plausibly alleged that he has an impairment that substantially limits one or more major life activities"), aff'd, 2023 WL 8708417 (2d Cir. 2023).  Defendants cite Smeraldo v. Jamestown Public Schools, 2023 WL 424490 (W.D.N.Y. 2023) to support their position that plaintiff has failed to do so.  There, plaintiff alleged he was discriminated against due to his disabilities in violation of the ADA.  Id. at *1.  He alleged disability due to "high blood pressure, a neurological injury to his neck, and osteopathic injuries, including a herniated disc and two bulging discs".  Id. at *2.  He claimed that he required "reasonable accommodations . . . to moderate his blood pressure".  Id.  Plaintiff alleged that "at times" and "without warning" his "blood pressure soared" and caused "acute dizziness, vomiting, and syncope".  Id.  These episodes "impacted [his] ability to stand, walk, drive, and speak".  Id.  He alleged he "has taken 5 days of sick leave" due to his high blood pressure. Id.

    The court noted that "[a]lthough the term 'substantially limits' is not meant to be a demanding standard . . . it is well-established that an impairment does not significantly restrict a major life activity if it results only in mild limitations".  Id., *10.  Further, "a plaintiff must do more than simply allude to his impairments in his pleading; he must plead *how* those impairments significantly impact his major life activities".  Id.  The court found that plaintiff's allegations concerning the effects of his high blood pressure condition were "vague at best":

> "For example, he characterizes his condition as 'wholly disabling given the likelihood of syncope,' but he does not say how often he experiences 'instances of exceptionally high blood pressure' or loss of consciousness. . . . Likewise, he alleges generally that his high blood pressure 'at times' limits his ability to stand, walk, drive, and speak . . . but that sort of broad allegation has been found to be 'impermissibly vague' as well".

Id.  The court agreed with defendants that plaintiff's allegations lacked "the factual specificity required to establish that his alleged disabilities affect a major life activity" and that he "therefore has failed to plead that he has a disability under the ADA, and his ADA claims are dismissed for that reason".  Id. at *10.

Plaintiff argues that Smeraldo "is inapposite as both the nature of the plaintiff's requested accommodation and the relationship of the plaintiff's medical condition to the accommodation are entirely different than those presented here".  Plaintiff's Memorandum of Law [16] at 5.  Plaintiff's attempt to distinguish Smeraldo does not address the threshold question of whether she has properly alleged a disability under the ADA that would entitle her to the protections of the statute.  On that issue, however, Smeraldo is useful comparison.  Plaintiff argues that her allegation "that her PFO causes her difficulty beathing" "alleges a limitation of a major life activity – breathing".  Id. at 3.

I agree that breathing is a major life activity.  However, merely alleging that a major life activity is affected by an identified impairment is not sufficient.  Plaintiff's allegations must demonstrate that the life activity is "substantially limited".  As in Smeraldo, plaintiff failed to do that.  She argues that her allegations in paragraphs 12 and 13 of her Amended Complaint satisfy her pleading obligations:

> "[I]t is readily apparent that Plaintiff's allegation that her PFO causes her difficulty beathing likewise alleges a limitation of a major life activity – breathing.  Indeed, Plaintiff further alleges that when she experiences such difficulty breathing, she needs to stop whatever she is doing.  Dkt 12, ¶ 12.
>
> While difficulty in the ability to perform the vital bodily function of breathing should clearly be enough to establish a disability *per se*, notably here Plaintiff also alleges that her PFO renders her at an increased risk of stroke.  Dkt. 12, ¶ 13."

Plaintiff's Memorandum of Law [16] at 3.  Plaintiff's allegations demonstrate that her symptoms, when they occur, are sufficiently severe that "she needs to stop whatever she is doing".  She does not, however, indicate how often the symptoms occur, or how long they last when they do occur.

Even though breathing is undoubtedly a major life activity, plaintiff is required to allege more.  Shine v. New York City Housing Authority, 2020 WL 5604048 (S.D.N.Y. 2020) illustrates this point.  There, plaintiff alleged on behalf of herself and her minor child that defendants violated their rights under the ADA and the Rehabilitation Act for failing to abate the mold in their apartment.  Id. at * 1.  She alleged, among other things, that she experienced "trouble sleeping" and "trouble breathing at night".  Id. at *6-7. The court found that plaintiff's allegations concerning these major life activities were insufficient to establish a disability as defined by the ADA and Rehabilitation Act:

> "For Shine's difficulty sleeping to qualify as a substantial impairment of a major life activity, however, she must allege facts regarding the frequency, duration, and severity of her sleep impairment.
> ***
> Breathing is one of the enumerated major life activities covered under the ADA regulations. . . . As described above, courts in this Circuit have established that plaintiffs must plead more than vague or conclusory allegations regarding 'difficulty' or 'trouble' conducting a major life activity".

Id.  In contrast, the court found that plaintiff sufficiently pled on her child's behalf a condition that substantially limited his ability to breathe:

> "Shine alleges that C.W.'s difficulty breathing is severe enough that he requires use of an asthma machine to 'breathe properly' . . . This is sufficient to allege that C.W. experiences a substantial limitation to the major life activity of breathing, and therefore has a cognizable disability within the meaning of the ADA".

Id. at*7.  Here, plaintiff does not allege that she needs a machine to breathe properly.  Nor does she allege any details concerning the frequency that she experiences "difficulty breathing" or the duration of these episodes.  See Amended Complaint [12], ¶ 12.

Plaintiff's allegation concerning her "increased risk of stroke" (see id., ¶ 13) fails for a similar reason.  Plaintiff does not allege any detail concerning how her increased risk of stroke affects any major life activity.  Moreover, even if we assume that being at an increased risk of stroke implicates a major life activity, plaintiff has still failed to allege facts necessary to demonstrate that increased risk substantially limits a major life activity in any way.  "Under the precedent within the Second Circuit, it is the nature of the ordinary limitations – not the severity of the consequences if a plaintiff fails to follow necessary treatment that determines whether a limitations on a major life activity is substantial".  Krikelis v. Vassar College, 581 F.Supp.2d 476, 485 (S.D.N.Y. 2008); see also Smeraldo, 2023 WL 424490 at *10 (rejecting as a "substantial limitation" plaintiff's "vague" claim that his high blood pressure condition is "wholly disabling given the likelihood of syncope" without additional details).

Even expanding my view of plaintiff's allegation of increased risk of stroke to assume she intended to plead that defendant "regarded" her as having a disability, her claim fails:

> "[T]he ADA's prohibition on discrimination based on perceived disability applies only when the employer regards the employee as "*having* . . . an impairment." 42 U.S.C. § 12102(1)(C) . . . Consistent with that language, every circuit court that has addressed the issue has concluded that the ADA does not prohibit discrimination based on *future* impairments."

Williams-Moore v. Quick International Courier, LLC, 2023 WL 6292540, *4 (E.D.N.Y. 2023).

It may be that defendants incorrectly assessed whether plaintiff had a valid medical reason to be exempt from the vaccination policy.  However, even if that is the case, that error is not actionable under the ADA or the Rehabilitation Act under these circumstances.

## CONCLUSION

For these reasons, I recommend that defendants' motion to dismiss [14] be granted. Unless otherwise ordered by District Judge Sinatra, any objections to this Report and Recommendation must be filed with the clerk of this court by January 3, 2024. Any requests for extension of this deadline must be made to Judge Sinatra. A party who "fails to object timely . . . waives any right to further judicial review of [this] decision". Wesolek v. Canadair Ltd., 838 F. 2d 55, 58 (2d Cir. 1988); Thomas v. Arn, 474 U.S. 140, 155 (1985).

Moreover, the district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not, presented to the magistrate judge in the first instance. Patterson-Leitch Co. v. Massachusetts Municipal Wholesale Electric Co., 840 F. 2d 985, 990-91 (1st Cir. 1988).

The parties are reminded that, pursuant to Rule 72(b) and (c) of this Court's Local Rules of Civil Procedure, written objections shall "specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection . . . supported by legal authority", and must include "a written statement either certifying that the objections do not raise new legal/factual arguments, or identifying the new arguments and explaining why they were not raised to the Magistrate Judge". Failure to comply with these provisions may result in the district judge's refusal to consider the objections.

Dated: December 20, 2023

_____
JEREMIAH J. MCCARTHY
United States Magistrate Judge